# IN THE COURT OF APPEALS OF IOWA

No. 19-0931
Filed October 9, 2019

**IN THE INTEREST OF L.H.,**
**Minor Child,**

**R.H., Father,**
    Appellant,

**D.G., Mother,**
    Appellant.
_____


Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.


A mother and father separately appeal the juvenile court's removal, adjudicatory, and dispositional orders in a child-in-need-of-assistance proceeding. **AFFIRMED ON BOTH APPEALS.**


Jean Capdevila, Davenport, for appellant father.

Jack E. Dusthimer, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Rebecca G. Ruggero, Davenport, guardian ad litem for minor child.


Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

A mother and father separately appeal the juvenile court's removal, adjudicatory, and dispositional orders in a child-in-need-of-assistance (CINA) proceeding.[1] Both parents challenge the sufficiency of the evidence supporting (1) the initial removal and continuance of removal at the time of adjudication and disposition, (2) adjudication of the child as a CINA under Iowa Code section 232.2(6)(b) and (c)(2) (2018),[2] and (3) the juvenile court's dispositional finding that the State made reasonable efforts.

**I.      Background Facts and Proceedings**

L.H., born in 2015, is the child of R.H. and D.G. The Iowa Department of Human Services (DHS) has been involved with the family in the past. *See, e.g.*, *In re L.H.*, 904 N.W.2d 145 (Iowa 2017).[3] The family again came to the attention of DHS in September 2018 upon allegations of drug use in the home. The parents refused to allow DHS access to the home or cooperate with services. Shortly thereafter, law enforcement executed a search warrant on the family home upon concerns for drug use and distribution. Officers found marijuana in three drawers accessible to the child. They also observed L.H. roaming the home as the mother slept. Police found "approximately 38 grams of marijuana concentrates, 29 'Vyvanse' pills not in a labeled prescription bottle, . . . a box of sandwich baggies, a digital scale, indicia which shows multiple trips to Colorado to purchase

---

[1] The mother also appealed following the dispositional orders concerning L.H.'s two older half-siblings. R.H. is not the father of the half-siblings. Our supreme court dismissed the mother's appeals as to the older children as untimely.

[2] The child was also adjudicated CINA under section 232.2(6)(o). Neither parent challenges that ground for adjudication.

[3] Prior physical abuse of a half-sibling by the father resulted in CINA adjudication pursuant to section 232.2(6)(b) and (c)(2) in 2017. *L.H.*, 904 N.W.2d at 148.

marijuana including receipts from CO dispensaries, and handwritten ledgers showing marijuana distribution." Police also found "approximately 100 items of drug paraphernalia including pipes, bongs, grinders, etc." The parents were arrested. The child tested positive for marijuana in late September. The State sought and obtained an order for temporary removal of L.H. and his half-siblings, which was entered on September 19. Following a hearing, the court formally confirmed removal.[4]

The State petitioned for CINA adjudication. A hearing on the petition was held in December. By this point, while the parents were participating in visitations twice per week, they were otherwise refusing to participate in services. They generally attribute this to the pending criminal cases against them. In January, the court adjudicated the children CINA pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (o), citing the parents' history of drug use and domestic violence in the children's presence, the drug distribution operation in the family home, and concerns for the parents' ability to properly supervise the child.

In May 2019, the district court found the best interests of the children required continued CINA adjudication and out-of-home placement. The court recounted prior findings regarding the presence and use of illegal substances in the home and the child's positive drug test. However, the court noted the mother's "very good parenting skills," in finding both parents needed to participate in services. The parents had not fully complied with court-ordered random drug tests. Nor had the parents completed court-ordered psychological evaluations to

---

[4] Both parents filed notices of appeal from the court's removal order. The supreme court treated the notices of appeal as applications for interlocutory appeal and denied them.

determine why they continue to place the children at risk in light of the mother's ability to appropriately parent. The court also considered the parents' refusal to submit to drug testing as an indication they would test positive for illegal substances. The court concluded:

> Parents who use drugs while responsible for the care of children place those children at risk of harm in addition to exposure. Parents under the influence do not provide good supervision. Their judgment and reaction times are affected. Drug trafficking within a child's home exposes the child to dangerous people and situations, including armed police raids.

The record also shows the mother has placed her relationship with the father above relationships with her children. When the children were initially removed from the home, the mother refused visitation with her two oldest children. She did so because the father was unable to participate in those visits, as he is not the father of either child. Furthermore, the family's prior involvement with DHS shows both parents have engaged in a similar pattern of behavior regarding participation in services. The child's prior CINA adjudication was based on the father's physical violence toward one of the older siblings in 2016. *Id.* at 146. In those proceedings, our supreme court noted the father's failure to comply with services offered by DHS. *Id.* at 147, 153. Throughout those proceedings, the mother's behavior showed a priority for protection of her relationship with the father, going so far as to "qualify and modify her . . . statements about the incident" of abuse leading to adjudication. *Id.* at 147; *see also id.* at 152–54 (variously discussing the mother's propensity to protect the father).

Following adjudication, the parents sent a letter to the court in which they, among other things, noted they "have been thrown into financial hardship by DHS

placing [L.H.] over 90 miles" away. The parents did not specifically request a change in services to remedy the alleged situation.

A dispositional hearing was scheduled for February. The hearing was rescheduled for March upon the father's motion for a continuance. Shortly before the dispositional hearing, the parents submitted to drug testing. However, they would only agree to a urine test, and they refused to take a hair-stat test. The morning of the dispositional hearing, the mother filed an objection generally challenging the accuracy and credibility of the evidence supporting removal and adjudication. At the dispositional hearing, the parents generally argued the State was not meeting its reasonable-efforts mandate. The court responded the parents were not abiding by court orders to participate in services. In May, the court entered its dispositional order in which it ordered continued removal and the parents' participation in specific services aimed at reunification. As noted, both parents appeal.

## II.     Standard of Review

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). We give weight to the juvenile court's fact findings but are not bound by them. *Id.* Our principle consideration is the child's best interests. *Id.* "The state shall have the burden of proving the allegations by clear and convincing evidence." Iowa Code § 232.96(2). Clear and convincing evidence "leaves no serious or substantial doubt about the correctness of the conclusion drawn from it." *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002) (quoting *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983)).

### III.    Analysis

Both parents challenge the sufficiency of the evidence supporting (1) the initial removal and continuance of removal at the time of adjudication and disposition, (2) adjudication of the child as a CINA under section 232.2(6)(b) and (c)(2), and (3) the juvenile court's dispositional finding that the State made reasonable efforts.

#### A.    Removal

Both parents separately argue initial and continued removal from the home was inappropriate.  They argue there was no imminent risk of harm to the child, specifically challenging hearsay testimony presented at hearings.  Because the initial removal and continued removal at the time of adjudication cannot now be remedied, whether those decisions were correct is moot and we do not address them.  *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994).  Accordingly, our review will focus on the challenges to continued removal at the time of disposition.

Following a dispositional hearing, "the court shall make the least restrictive disposition appropriate considering all the circumstances of the case."  Iowa Code § 232.99(4).  Removal is appropriate "if the court finds that substantial evidence exists to believe that removal is necessary to avoid imminent risk to the child's life or health."  *Id.* § 232.95(2)(a).  A removal order must "make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and that reasonable efforts . . . have been made to prevent or eliminate the need for removal of the child from the child's home."  *Id.* § 232.95(2)(a)(1).  Removal findings "shall be made by substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of

the hearsay to be credible and for believing that there is a factual basis for the information furnished." Iowa Ct. R. 8.19. "The most important consideration in any CINA case is the best interests of the child." *D.D.*, 653 N.W.2d at 362.

The Iowa Code gives preference to a child's placement with a parent, guardian, or custodian. *See* Iowa Code § 232.102(6)(a). Custody should not be transferred unless clear and convincing evidence shows "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a [CINA] and an adequate placement is available." *Id.* § 232.102(6)(a)(2). If a court transfers custody, it "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made. . . . [P]reserving the safety of the child is the paramount consideration." *Id.* § 232.102(6)(b).

In this case, the court was presented with substantial evidence indicating serious risk to the health and well-being of the child. When executing the search warrant on the home in September 2018, police found thirty-eight grams of marijuana concentrates, twenty-nine Vyvanse pills without a labeled prescription bottle, drug paraphernalia, and evidence of purchases and sales of marijuana. Marijuana was accessible to the child. The officers executing the warrant reported the child roamed through the home when they arrived while the mother was sleeping and not properly caring for the child. A hair-stat test of the child was positive for marijuana. The child's older half-siblings reported having knowledge the parents travelled to Colorado to purchase marijuana, and there were reports they witnessed the father both purchase marijuana in Iowa and smoke it. Both parents initially refused to cooperate with and allow DHS access to the home. At

the dispositional hearing in March 2019, the parents had only partially complied with drug testing that was ordered in January, and they continued to refuse court-ordered psychological evaluations. Although visitation reports and the dispositional order indicate the mother has good parenting skills, those skills are not enough to overcome the evidence of the risk of harm to the child presented at the time of removal and continuing through disposition. On our de novo review of the record, we find continued removal at the time of disposition was appropriate.

B.     Adjudication and Disposition

The child was adjudicated CINA pursuant to Iowa Code sections 232.2(6)(b), (c)(2), and (o). The parents only challenge adjudication under the first two provisions.[5]

Section 232.2(6)(b) defines a CINA as any unmarried child "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." "'Physical abuse or neglect' or 'abuse or neglect' means any nonaccidental physical injury suffered by a child as a result of the acts or omissions of the child's parent." *Id.* § 232.2(42). In order for a court to adjudicate based on past physical abuse or neglect, there must have been physical injury to the child. *J.S.*, 846 N.W.2d at 41. The facts of this case do not indicate there has been prior physical injury to the child. Thus, we are required to determine whether it is imminently likely abuse or neglect will occur. *See* Iowa Code

---

[5] For purposes of sections 232.2(6)(b) and (c)(2), both parents separately argue hair-stat testing was an insufficient method of testing the child for marijuana. Although neither of them challenged the section 232.2(6)(o) adjudication based on the child testing positive for a drug, we choose to address the argument as a challenge to adjudication.

§ 232.2(6)(b). Even with the requirement of likelihood of imminent abuse or neglect, we do not require either to be "on the verge of happening" prior to CINA adjudication. *J.S.*, 846 N.W.2d at 43.

In this case, the hair-stat test of the child was positive for marijuana. The positive test is consistent with the contraband found in the home during execution of the search warrant. When police arrived to execute the search warrant, the three-year-old child was found roaming the home as the mother slept. We agree with the juvenile court the lack of adult supervision combined with the presence of drugs in the home within reach of the child is strong evidence of neglect. The older children also reported the father's marijuana use and purchase in their presence. The evidence also shows an illegal drug distribution operation was going on in the home. As the juvenile court noted, "Drug trafficking within a child's home exposes the child to dangerous people and situations." Both parents failed to completely comply with DHS services, including drug testing. Both parents also refused to give DHS access to the home. It is clear on our de novo review an imminent likelihood of harm or neglect exists and CINA adjudication pursuant to section 232.2(6)(b) was proper. *See id.*

Section 232.2(6)(c)(2) defines a CINA as an unmarried child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of" "[t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Harmful effects are "established when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 41–42. "An important aspect of a parent's care for his or her child is to address his or her role in the abuse of the child." *L.H.*, 904 N.W.2d at 153. "The State may

not penalize [a parent] for noncompliance with a court order impinging on his right against self-incrimination." *In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002). But such noncompliance may have consequences, including the parent's inability to successfully obtain treatment required by the court. *Id.*

Here, both parents refused to participate in drug testing or otherwise participate in services. The parents framed their failure to comply with juvenile court services as protection from collection of evidence that could be used in criminal court. The parents cannot, however, evade compliance with services in juvenile court by relying on their constitutional protections as criminal defendants. The parents' failure to comply with drug and psychological testing is a failure to address each parent's role in events causing adjudication. The district court ordered psychological evaluations to determine whether there were any underlying psychological issues that may influence the parents' proclivity for using drugs. Although the parents challenged the psychological evaluation, arguing there was no evidence to support the evaluation and it could be harmful to the pending criminal cases, the court stated at the dispositional hearing that the results could be sealed from use in the criminal cases and their failure to comply tended to show the parents were hiding issues from the court. Furthermore, a hair-stat test of the child was positive for marijuana after police located approximately thirty-eight grams of marijuana in the home and numerous other pieces of drug paraphernalia and contraband. The presence of drugs in the home led to the child's positive drug test. The existence of illegal substances in a child's body is an adjudicatory harm to the child. Furthermore, the evidence presented shows a failure to properly supervise the child while drugs were present in the home. It is obvious in this

situation the child was subject to imminent physical harm. On our de novo review, we agree with the district court that CINA adjudication pursuant to section 232.2(6)(c)(2) was proper.

Adjudication pursuant to section 232.2(6)(o) involves situations in which an illegal drug is present in a child's body from exposure due to conduct of a parent, guardian, or custodian. The statute states the presence of an illegal substance must be determined by a "medically relevant test as defined in section 232.73." Iowa Code § 232.2(6)(o). A medically relevant test is "a test that produces reliable results of exposure to cocaine, heroin, amphetamine, methamphetamine, or other illegal drugs, or combinations or derivatives of the illegal drugs." *Id.* § 232.73(2).

The parents argue the hair-stat test performed on the child is insufficient and unreliable evidence. The parents cite to the Substance Abuse and Mental Health Services Administration website, stating federal workplace programs use only urine tests, and to a study discussing the possibility of environmental contamination. Neither parent points to any case law or statute condemning the use of hair-stat testing for children. The Iowa Supreme Court has accepted hair-stat testing in the past, for children and adults, in juvenile court cases. *See, e.g.*, *In re M.W.*, 876 N.W.2d 212, 216 (Iowa 2016) (listing the results of hair-stat tests among the facts of the case); *In re A.B.*, 815 N.W.2d 764, 767, 768, 770 (Iowa 2012) (discussing avoidance of hair-stat testing through head shaving and alternate testing when hair is unavailable). Accordingly, we accept hair-stat testing as well.

Each parent contested the timing of the hair-stat test, for which the sample was collected approximately two weeks after removal. Testimony provided at the

dispositional hearing indicates a hair-stat test "goes back about three months."  A two-week delay in testing would not alter the efficacy of the test in this case.

On our de novo review, we find clear and convincing evidence supported CINA adjudication pursuant to section 232.2(6)(b), (c)(2), and (o) and continued DHS involvement with the family.

C. Reasonable Efforts

*1. Error Preservation*

The State contests error preservation as to the reasonable-efforts arguments.  The parents argue error was preserved by contested hearings, objections to evidence, an attempt at an interlocutory appeal, and a request for a finding of failure to make reasonable efforts.

"A challenge to the sufficiency of the State's efforts to reunite parents with their children should be raised when the services are offered."  *In re S.J.*, No. 14-0978, 2014 WL 4231161, at *2 (Iowa Ct. App. Aug. 27, 2014) (citation omitted). Parents who are unsatisfied with the services provided by DHS must complain to the juvenile court.  *C.H.*, 652 N.W.2d at 148.  Our review of the record shows the parents contested the location of visits, by filing a letter with the court on January 16, 2019, but did not contest the requirements of drug and psychological testing or the level of contact between DHS and the parents until the dispositional hearing in March 2019.  The court made findings on all of the issues.  Because of the requirement to raise objections at the time the services are offered, we find error was preserved as to visitation and will address reasonable efforts as to that service.  *See S.J.*, 2014 WL 4231161, at *2.

*2.    Merits*

Both parents separately argue DHS failed to make reasonable efforts to avoid removal and toward reunification.  They argue visitation has been inadequate and the location of the visits has been improper, the child should have been placed with a family member located closer to the parental home, and DHS failed to timely create and file a case plan and maintain an appropriate level of contact with the family.  Reasonable efforts are:

> the efforts made to unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal for the child or make it possible for the child to safely return to the family's home. . . .  If returning the child to the family's home is not appropriate or not possible, reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child.  A child's health and safety shall be the paramount concern in making reasonable efforts.  Reasonable efforts may include but are not limited to family-centered services, if the child's safety in the home can be maintained during the time the services are provided.

Iowa Code § 232.102(12)(a).  Factors courts consider are "(1) [t]he type, duration, and intensity of services or support offered or provided to the child and the child's family" and "(2) [t]he relative risk to the child of remaining in the child's home versus removal of the child."  *Id.* § 232.102(12)(a)(1), (2).  Family-centered services include:

> services and other support intended to safely maintain the child with the child's family or with a relative [and] to safely and in a timely manner return a child to the home of the child's parent or relative . . . .  Family-centered services are adapted to the individual needs of a family in regard to the specific services and other support provided to the child's family and the intensity and duration of the service delivery.  Family-centered services are intended to preserve a child's connections to the child's neighborhood, community, and family and to improve the overall capacity of the child's family to provide for the needs of the children in the family.

*Id.* § 232.102(12)(b).  Visitation is included in a reasonable-efforts analysis.  *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

From the outset, both parents have been reluctant to engage in contact with DHS and allow agency personnel into the home.  Although the parents requested in-home visits, a neutral location between the parental home and the child's placement was found to be a central location for all parties.  The parents were provided gas cards to help ensure they were able to attend visitation.  Visitation issues occurring during the proceedings have been related to staffing issues and weather conditions making travel unsafe.  The record discloses attempts by service providers and parents to make up missed visitation time.

At all times during the proceedings, the child was in an appropriate, relative placement with the mother's sister and her family, even though the placement was approximately ninety minutes away from the parental residence.  The record shows the child was happy and healthy in the initial placement with the maternal aunt.  Although the paternal grandfather was physically closer to the parental residence and available for placement, the delay in consideration of that placement was based on his own prior conduct resisting DHS contact with the father.[6]  On the date of the dispositional hearing, March 21, 2019, a home study of the paternal grandfather's home was underway.[7]  The health and safety of the child is best served by regular, supervised visitation with his parents and placement outside the

---

[6] The record indicates that, during prior DHS involvement with the family, an agency representative attempted to contact the father at the paternal grandfather's home.  The grandfather denied the father was present even though both men were standing together in the driveway of the home.

[7] The record shows a motion for change of placement to place the child in the paternal grandfather's custody was filed on June 3, 2019.  The motion for change of placement is not a part of this appeal.

parental home.  On our de novo review, we agree with the district court that DHS consistently made reasonable efforts in this case.

**IV.    Conclusion**

On our de novo review, we affirm the juvenile court on all issues.

**AFFIRMED ON BOTH APPEALS.**